## GARLICK v. GARLICK OIL CO., et al.

Industrial Commission.

February 26, 1952.

12

David B. Phillips, Miami, for claimant.

James A. Reece, Miami, for defendants.

JAMES R. KNOTT, Deputy Commissioner.

Robert J. Garlick, Jr. claims the benefits of the Workmen's Compensation Act on account of disabling injuries received by him on April 16, 1951, in an automobile accident on New South River Canal Bridge, State Road No. 7, Broward County. At the time of his accident the claimant was employed by his father, Robert J. Garlick, trading as Garlick Oil Co., as a spare or fill-in transport truck driver and service station auditor and supervisor, at an average weekly wage of $60.

The compensation insurance carrier for the employer denies liability for Garlick's injuries on the ground that the same did not arise out of and in the course of his employment.

A hearing upon the merits of Garlick's claim was held at Fort Lauderdale in due course, at which the insurance carrier

was not represented, although the carrier had received regular notice of the hearing by registered mail. The claimant testified at the hearing that his employer operates a wholesale gasoline business, using two large trailer trucks for transportation of gasoline, and in addition owns five automobile service stations in Miami and delivers gasoline to those and other service stations in that area; that on the day of the accident, he, claimant, checked two service stations and found that one of them would require gasoline in bulk by 6 A.M., and the other before noon, of the following day; that his duties required him to get gasoline to said service stations, which he planned to haul from Republic Oil Co. at Port Everglades. Not having driven an oil truck since the previous summer, and knowing that both U. S. Highway No. 1 and State Road No. 7, the principal highways between Miami and Port Everglades, were under repair, claimant testified that he undertook on the evening of his injury to drive an automobile via Road No. 7 from Miami to Port Everglades and to return to Miami on Highway No. 1, in order to observe the condition of the roads and decide on which route the heavy trailer truck should be driven on its gasoline trip, and that a second purpose of his automobile trip was to find one Burl Dotson at Port Everglades to offer him a job; that pursuant to these purposes he left Miami between 8:30 and 9 P.M. accompanied by one Richard D. Hallowell; that on approaching the bridge where he was injured, he observed a car approaching slowly in the middle of the bridge, which was narrow. The approaching car did not yield sufficient right-of-way and a collision resulted. Claimant testified that he had not been drinking on the evening of his injury. Both he and Hallowell were hospitalized following the accident.

R. B. Dasher, general manager of the claimant's employer firm, testified that the activities in which the claimant was engaged on the evening of his injury were part of his duties; that he, Dasher, personally drove a truckload of gasoline from Port Everglades to Miami on the morning following claimant's injury, for the two service stations mentioned, and within a few days interviewed Burl Dotson and got him to accept the job about which the claimant had planned to interview him; that the Garlick gasoline trailer trucks weighed 25 or 26 tons loaded.

It will be seen that the evidence thus presented at the hearing mentioned, standing alone and uncontradicted, was sufficient to establish that claimant's injury arose out of and in the course of his employment.

A week subsequent to said hearing, and before an order was made upon the merits of the claim, the insurance carrier's Miami attorney learned for the first time that hearing on the claim had been held and filed petition for rehearing, alleging that the carrier's Orlando office, which had received notice of the hearing, had failed to forward said notice to its attorney, in the belief that the latter had been furnished by the commission with a separate copy of the notice, and it was for that reason that the carrier had not been represented at the hearing. The petition set forth allegations of fact which, if true, would constitute a successful defense to the claim. The carrier thereupon took and submitted the depositions of 5 witnesses, including the claimant and Hallowell, and at a further hearing held at the carrier's request, asked that such depositions be received in evidence in the cause.

The claimant objects to the right of the carrier to have the proceedings reopened for the presentation of evidence in defense of the claim, and contends, further, that the depositions, which were taken in Miami, are not admissible in evidence under Common Law Rule 20, the witnesses not having been "at a greater distance than one hundred miles from the place of trial or hearing" in Fort Lauderdale, and there having been no showing that "such exceptional circumstances exist as to make it desirable in the interest of justice * * * to allow the deposition to be used."

In failing to notify its attorney of the time and place of the original hearing on the merits of the claim, the insurance carrier cannot be held free from negligence. The precise question presented, however, does not relate to the right of the insurance carrier to have the proceeding reopened, but to the lawful power and authority of the commission to reopen the cause in the interest of justice, where, as in this case, a valid defense is shown by the carrier. Conceding that the carrier's failure to attend the first hearing was due to its own negligence, is the commission authorized, in the exercise of a reasonable discretion, to reopen the proceeding?

The Workmen's Compensation Act provides as follows:

In making an investigation or inquiry or conducting a hearing the Commission shall not be bound by technical or formal rules of procedure, except as provided by this chapter; but may make such investigation or inquiry, or conduct such hearing in such manner as to best ascertain the rights of the parties. * * * Section 440.29(1), Florida Statutes of 1951.

It is evident that the Act authorizes the commission to reopen a cause if it appears necessary to do so in order to best ascertain the substantial rights of the parties, in the interest of justice. The commission is more than a detached observer of disputants in claims proceedings, with authority to decide the issues. It is in a sense a party to every proceeding, with the obligation as well as the power to make diligent inquiry regarding the facts; in its administrative capacity it is an investigating as well as a quasi-judicial agency. The oversight or negligence of a party to a dispute cannot be allowed to obstruct or hinder the commission's search for the truth, or affect its obligation to do so. As an illustration of the use of its discretion, the commission not infrequently finds, after both parties have closed the presentation of evidence, that further and additional testimony is needed in order to establish the facts more fully, particularly in proceedings involving medical questions. Its authority to order a further hearing, *sua sponte*, for the receipt of such additional testimony is commonly accepted without question — and rightly so, under the broad powers granted the commission by law. Applying this principle to the present cause, it is apparent that the commission *does* have authority to reopen the proceeding and receive the carrier's evidence in defense of the claim.

Section 440.30, Workmen's Compensation Act, provides that depositions of witnesses may be taken "in the manner prescribed by law for like depositions in civil actions at law." As noted above, the claimant objects to the admissibility of the carrier's depositions in this proceeding, on the ground that the same were not taken in strict pursuance of Common Law Rule 20. The claimant was represented by counsel at the taking of these depositions. The fact that the depositions were not taken in strict pursuance of Rule 20 did not result in an invasion or violation of the claimant's essential rights. Claimant's objection to the admissibility of the depositions is therefore overruled, and the same are received in evidence. We shall now consider the merits of the carrier's defense to the claim.

The testimony of a non-interested witness, Wilfred J. Wiley, adjuster for the Aetna Affiliated Companies, with which claimant's employer carried his automobile liability insurance, showed that he took the statement of the claimant, Robert J. Garlick, Jr., on April 23, 1951, in connection with an investigation of the accident which had occurred one week prior to that time. The statement, signed by the claimant, reads in part:

16

On April 16th, 1951, at about 10:30 P.M., I was driving my father's '46 Olds four-door sedan north on Route 7 to Fort Lauderdale, Florida, when involved in an accident on a narrow two-lane bridge. *I was en route to Jacksonville, Florida,* and accompanied by Mr. Richard Hallowell, my brother-in-law. (Italics added)-

Wiley's testimony further showed that he took the signed statement of Richard D. Hallowell on April 18, 1951, reading in part as follows:

On April 16th, 1951, at about 11:30 P.M., I was seated in the right front seat of a '46 Olds, four door, operated by Robert Garlick, Jr., and traveling north on Route 7 to Fort Lauderdale, Florida, when involved in an accident. Bob and I were the only occupants of the car. *We were en route to the home of my sister, Helen H., in Jacksonville, Florida,* at the time. (Italics added)

Disregarding inconsistencies between the testimony of other non-interested witnesses and that of the claimant, the plausibility of the latter's account of the reason for his journey is weakened by a consideration of the question of the *necessity* for such an exploratory trip on behalf of an organization engaged regularly in the gasoline haulage business. Up-to-date information on road conditions between Miami and Port Everglades, which adjoins Fort Lauderdale, should have been and doubtless was readily available from many different sources, including other drivers in the Garlick concern and in similar Miami trucking firms, as well as various public and private agencies.

The weight of the evidence as a whole does not justify a conclusion that the claimant's injury arose out of and in the course of his employment, and the claim is therefore denied.